**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 4, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ISAAC HEADMAN,

Defendant - Appellant.

No. 09-1033

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 1:07-CR-00371-REB-3)**

---

Elizabeth L. Harris, (Andrew W. Myers, with her on the brief), Jacobs Chase
Frick Kleinkopf & Kelley, LLC, Denver, Colorado, for Defendant - Appellant.

James C. Murphy, Assistant United States Attorney, (David M. Gaouette, United
States Attorney, Michael Carey and Todd Norvell, Assistant United States
Attorneys, with him on the brief), Denver, Colorado, for Plaintiff - Appellee.

---

Before **LUCERO**, **MCKAY**, and **HARTZ**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

Defendant Isaac Headman was convicted in the United States District Court

for the District of Colorado of first-degree premeditated murder, first-degree

felony murder, and kidnapping. He appeals, raising the following challenges to

his convictions: (1) that double jeopardy bars his convictions for both felony murder and the lesser-included offense of kidnapping; (2) that the government violated its duties under *Brady v. Maryland*, 373 U.S. 83 (1963), by not disclosing that two of its witnesses had shared a cell during trial; and (3) that the district court committed plain error by not informing the jury that the intoxication instruction submitted by him applied to aiding and abetting first-degree premeditated murder.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part and reverse in part. The government concedes error on the double-jeopardy issue, agreeing with Defendant that either the felony-murder or kidnapping conviction should be vacated on remand. We reject Defendant's two remaining challenges. He has not persuaded us that the cell-sharing arrangement was material evidence or that the failure of the intoxication instruction to mention aiding and abetting was plain error.

## I.    BACKGROUND

### A.    The Murder

Clifton Joseph Greany was murdered during the early hours of August 23, 2007. Before his death he had been drinking with Johnita Taylor, April Watts, Monica Williams, Defendant, and others in Ignacio, Colorado. An argument erupted between Taylor and Greany, and Defendant joined in, punching and kicking Greany; Watts and Williams followed suit. Defendant drove Taylor,

Watts, Williams, and Greany (who was in the trunk) to a location near a maintenance yard within the boundaries of the Southern Ute Indian Reservation. There, Williams, Watts, and Defendant, encouraged by Taylor, attacked Greany, stabbing him with a knife and stomping on him. Greany died from multiple stab wounds and blunt-force injuries.

The four culprits were arrested later that morning. At the police station Williams said that she had passed out at Taylor's house and was not involved in any murder. On August 25 Watts gave law-enforcement officers oral and written statements about Greany's murder. She orally reported that after the initial attack on Greany, "a decision was made by all of them but mainly [Taylor] that [Greany] would have to be killed [because] otherwise he would 'tell on them.'" R. Vol. 2, at 42. And her written statement explained that en route to the maintenance yard someone gave her a knife and "[a]ll I could remember is hearing a female saying that we have to kill him cause he was going to tell somebody that we beat him up." *Id.* at 43.

Williams and Watts eventually agreed to plead guilty to first-degree murder and to cooperate with the government in exchange for a lower recommended sentence and dismissal of certain charges. In her plea agreement, signed in April 2008, Williams acknowledged her involvement in the murder.

**B.     The Trial**

Defendant, an Indian, was indicted on charges of premeditated murder, felony murder premised on kidnapping, and kidnapping, all within Indian country. Each count of the indictment also invoked 18 U.S.C. § 2(a), the aiding-and-abetting statute.

Trial began on September 15, 2008. Immediately before opening statements, the district court invoked Fed. R. Evid. 615, directing that "except for the defendant and any other witness granted an exemption from sequestration, all other witnesses who may testify during this trial must now leave and remain outside the courtroom and shall not discuss their testimony with anyone, except for legal counsel, pending further order of court." *Id.* Vol. 3, Part 1 at 30. Unknown to defense counsel, Watts and Williams, who were to testify for the government, had been sharing a cell at the Southern Ute Detention Center since September 4; this arrangement continued—still without defense counsel's knowledge—until both had testified.

At trial Williams and Watts provided the only first-hand accounts of Greany's murder. On September 16 Williams testified that after Defendant handed her a knife, she stabbed Greany in the neck, breaking off the knife's handle in the process. Defendant told her to stomp the knife into Greany's throat, but she was unable to do so. Her testimony did not indicate whether anyone else had stabbed Greany. On cross-examination Williams said that she had not

discussed her testimony with anyone except her attorney, the prosecutor, and law-enforcement officials.

Watts, who testified two days after Williams, gave a somewhat different account of Greany's murder. According to Watts, she held the knife to Greany's throat and Williams stepped on it but failed to drive it in. Defendant also tried and failed to push the knife in, and proceeded to stomp on Greany's face. Defendant then held the knife as Watts stepped on it, forcing it through Greany's throat. Watts also testified that after the first attack on Greany in Ignacio, Defendant had said that they could not take Greany home because he would tell on them. And she said that later as they were driving toward the maintenance yard, "[Taylor] had a knife and she talked to [Defendant] and said—she said, I am going to have to kill him." *Id.* Part 3 at 536. Watts was cross-examined about her statement to law-enforcement officers that "a female [said] that we have to kill [Greany] because he was going to tell somebody that we beat him up." *Id.* at 558. When asked whether she "remember[ed] who that female was," she replied, "Johnita Taylor." *Id.* Defense counsel also asked Watts whether she had "do[ne] anything to prepare for your testimony today." *Id.* at 564. She replied that she had not.

At the jury-instruction conference Defendant submitted an intoxication-defense instruction. The district court approved it over the government's objection. On September 22 Defendant was convicted on all three counts.

## C.    Posttrial Judicial Proceedings

After both Williams and Watts had testified, a member of the courtroom audience alerted defense counsel that the two had been sharing a cell; the government confirmed this two days after the verdict.  On September 29 Defendant moved under Fed. R. Crim. P. 33 for an evidentiary hearing and new trial.  His motion alleged that Fed. R. Evid. 615 and the district court's sequestration order had been violated because the witnesses had "conferred over their respective testimony both before and, more importantly, after Ms. Williams testified and before Ms. Watts testified at Defendant's jury trial." *Id.* Vol. 1, Part 3 at 737.[1]  Although acknowledging that each witness had been cross-examined "as to what they did to prepare for their testimony and who they spoke with" and that "[n]either mentioned having spoken with each other," Defendant contended that "[i]t defies belief that neither [witness] would have spoken of the case at hand here or the questions posed by counsel at trial." *Id.* at 738.

The government denied that the witnesses had impermissibly conferred, and it submitted affidavits executed by Williams and Watts after trial.  Williams's affidavit states:

> Prior to my testimony, I was instructed by both my attorney . . . and by [the prosecutor] not to discuss my testimony with anyone, and in particular, not to discuss the facts of the case or my preparations with

---

[1]The motion also alleged that the "overwhelmingly Caucasian" jury pool had violated Defendant's due-process rights, R. Vol. 1, Part 3 at 735, but Defendant has not pursued this issue on appeal.

April Watts . . . .  After my trial testimony, I did not discuss my testimony or the questions asked with April Watts.

*Id.* at 752–53.  Similarly, Watts's affidavit states:

Prior to my testimony, I was instructed by [the prosecutor] not to discuss my testimony with anyone, and in particular, not to discuss the facts of the case or my preparations with Monica Williams . . . . After Monica Williams testified and before I testified in the trial, I did not learn of the questions asked of Monica Williams or what she said in court, and I did not discuss my future testimony with her.

*Id.* at 754–55.

The district court reviewed the witnesses' affidavits and their testimony on cross-examination.  Noting that defense counsel had examined each witness about her pretrial statements to law-enforcement agents, the court compared those statements with the witnesses' trial testimony and found no indication that "their testimony at trial appeared to be the result of jailhouse discussions between them that caused them to conform their testimony perjuriously to that of each other." *Id.* Vol. 3, Part 3 at 712–13.  The court continued:  "[T]he defendant does not point to specific facts in his motion, one, that co-defendants Watts and Williams violated my sequestration order, and two, that if they did confer, that they dishonestly conformed their testimony at trial to coincide with those impermissible discussions." *Id.* at 713.  Therefore it denied Defendant's motion without an evidentiary hearing.

We now turn to the two contested issues on appeal:  (1) whether the government's failure to disclose its witnesses' cell-sharing arrangement was a

-7-

*Brady* violation, and (2) whether the district court committed plain error in instructing the jury on the intoxication defense.

## II.   *BRADY* CHALLENGE

The *Brady* doctrine protects a defendant's due-process right to a fair trial by ensuring that the prosecution does not conceal evidence that could warrant an acquittal. "To establish a *Brady* violation, the defendant must prove that the prosecution suppressed evidence, the evidence was favorable to the defense, and the evidence was material." *United States v. Erickson*, 561 F.3d 1150, 1163 (10th Cir. 2009). "Impeachment evidence, . . . as well as exculpatory evidence, falls within the *Brady* rule." *United States v. Bagley*, 473 U.S. 667, 676 (1985). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Burke*, 571 F.3d 1048, 1053 (10th Cir. 2009) (internal quotation marks omitted). "[E]vidence significantly enhancing the quality of the impeachment evidence usually will [be material]." *Douglas v. Workman*, 560 F.3d 1156, 1174 (10th Cir. 2009). Although *Brady* claims typically arise from nondisclosure of facts that occurred before trial, they can be based on nondisclosure of favorable evidence (such as impeachment evidence) that is unavailable to the government until trial is underway. *See id.* at 1173 (the government's disclosure duty "continues throughout the judicial process."); *Smith v. Roberts*, 115 F.3d 818, 819, 820 (10th Cir. 1997) (applying *Brady* to a claim

-8-

that the prosecutor failed to disclose evidence received after trial but while the case was on direct appeal).

Defendant claims that the government violated his rights under *Brady* by not disclosing that Williams and Watts had shared a cell during trial. He contends that this is material impeachment evidence with which he could have "undermine[d] the witnesses' credibility based on their opportunity for collusion or fabrication." Aplt. Br. at 30. In district court, however, Defendant did not raise a *Brady* claim, only a claim of a violation of Rule 615 and the court's order under that rule. Our review is therefore for plain error. *See United States v. Redcorn*, 528 F.3d 727, 744 (10th Cir. 2008). To prevail, Defendant must show that "(1) there was error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Fields*, 516 F.3d 923, 943 (10th Cir. 2008) (internal quotation marks omitted). He cannot surmount even the first requirement. Because there was no *Brady* violation, we reject his claim.

Defendant's *Brady* claim fails because he has not shown that the undisclosed information is material. As the district court found, there was no evidence (1) that Williams and Watts had discussed the case or (2) that their testimony had been affected by any impermissible conversations between them. Absent such evidence, there is no reasonable probability that disclosure to

Defendant of the cell-sharing arrangement would have changed the trial's outcome.

Although Defendant has suggested that it is inconceivable that Williams and Watts did not discuss their testimony while confined together, their affidavits state that they had been instructed by the prosecutor not to discuss their testimony with each other, and both denied having done so. Moreover, Watts's testimony is consistent with her pretrial statements to investigators, and Defendant does not allege that the cell-sharing had tainted the testimony of Williams, who testified first.

At oral argument in this court, defense counsel suggested that the two witnesses could have discussed Williams's testimony and realized that it had some gaps, so that Watts would have to engage in "cleanup" when she testified. But the record reveals no such cleanup in which Watts expanded upon her pretrial statements. In support of her suggestion, counsel contended that Watts, despite having told law-enforcement officers that it was Taylor who said that Greany must be killed, testified at trial that the statement had been made by Defendant. The transcript of proceedings, however, does not support this contention. At trial Watts testified that while the group was driving Greany to the murder site, "[Taylor] had a knife and she talked to [Defendant] and said—she said, I am going to have to kill him." R. Vol. 3, Part 3 at 536. On cross-examination Watts again attributed the remark to Taylor.

It would have been better if Defendant had been informed during trial of the cell-sharing by the two eyewitnesses testifying against him. But this lapse did not deny him due process.

## III. JURY INSTRUCTIONS

Defendant was convicted of first-degree premeditated murder. The verdict form did not indicate whether he was convicted as the actual killer or as an aider and abettor. Defendant contends on appeal that he could have been wrongfully convicted as an aider and abettor because the instructions, although stating that intoxication can be a defense to premeditated murder, did not inform the jury that intoxication can be a defense to *aiding and abetting* premeditated murder.

Defendant acknowledges that he failed to raise the issue at trial and argues that we should therefore review for plain error. The government, however, contends that Defendant waived the issue because the court used the intoxication instruction submitted by Defendant. The dispute is interesting, but we need not resolve it because Defendant has not shown plain error and is therefore not entitled to relief even if he did not waive the issue. As stated earlier, to prevail on a claim of plain error, Defendant must establish that "(1) there was error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings." *Fields*, 516 F.3d at 943 (internal quotation marks omitted).

Defendant's theory on appeal is that because the jurors had not been told that intoxication can be a defense to aiding and abetting, they could have convicted him of aiding and abetting first-degree premeditated murder even though they harbored a reasonable doubt that he was sober enough to have the intent necessary for premeditated murder. To assess this theory, we must review the instructions given for first-degree premeditated murder, aiding and abetting, and intoxication.

The pertinent portion of the instruction for first-degree murder provided as follows:

> Defendant is charged in Count One of the Indictment with murder in the first degree.
>
> This law makes it a crime to unlawfully kill a human being with premeditation and malice aforethought. Every murder committed by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing, is murder in the first degree.
>
> To find defendant guilty of this crime, you must be convinced that the government has proved each of the following four (4) essential elements beyond a reasonable doubt:
>
> *First*: that defendant caused the death of Clifton Joseph Greany; and
> *Second*: that defendant killed Clifton Joseph Greany with malice aforethought; and
> *Third*: that the killing was premeditated; and
> *Fourth*: that the killing took place within the territorial jurisdiction of the United States.
>
> To kill "with malice aforethought" means either to kill another person deliberately and intentionally, or to act with callous and

wanton disregard for human life. To find malice aforethought, you need not be convinced that defendant hated the person killed, or felt ill will toward the victim at the time.

In determining whether the killing was with malice aforethought, you may consider the use of a weapon or instrument, and the manner in which death was caused.

A killing is "premeditated" when it is the result of planning or deliberation. The amount of time needed for premeditation of a killing depends on the person and the circumstances. It must be long enough for the killer, after forming the intent to kill, to be fully conscious of that intent.

You should consider all the facts and circumstances preceding, surrounding, and following the killing, which tend to shed light on the condition of defendant's mind, before and at the time of the killing.

R. Vol. 1, Part 3 at 705–06. The instruction on aiding and abetting stated:

Each count of the Indictment also charges defendant with a violation of 18 U.S.C. section 2, which provides that: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

This law makes a person criminally liable for a crime if he intentionally helps someone else commit a crime. To find defendant guilty as an aider and abettor of a crime, you must be convinced that the government has proved both of the following two (2) essential elements beyond a reasonable doubt:

*First*: that someone else committed the charged crime, and
*Second*: that defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means that the government must prove that defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help him or her.

-13-

Defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. However, a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed also are not sufficient to establish aiding and abetting.

*Id.* at 717. And the intoxication-defense instruction (which was submitted by Defendant) stated:

Although intoxication or drunkenness alone will never provide a legal excuse for the commission of a crime, the fact that a person may have been intoxicated at the time of the commission of a crime may negate the existence of a specific intent.

Thus, evidence that defendant acted or failed to act while in a state of intoxication is to be considered in determining whether or not defendant acted, or failed to act, with specific intent, as charged.

The element of premeditation necessary for murder in the first degree as charged in Count One of the Indictment requires the formation of a specific intent. No specific intent, of the type which might be negated by evidence of intoxication, is necessary for defendant to be guilty of the lesser included offense of murder in the second degree or the lesser included offense of voluntary manslaughter.

If the evidence in the case leaves the jury with a reasonable doubt whether, because of the degree of his intoxication, defendant was capable of forming, or did form, specific intent to commit the crime of murder in the first degree, the jury must acquit defendant of that crime.

*Id.* at 718.[2]

---

[2]The pertinent portion of the instruction for second-degree murder stated:

If you unanimously find defendant not guilty of murder in the first

(continued...)

Defendant contends that the instructions should have explicitly linked the intoxication defense and aiding and abetting. He points out that (1) although the intoxication-defense instruction explained that intoxication can negate the premeditation element of first-degree murder, it did not mention aiding and abetting; and (2) although the instruction also stated that the defense can negate the existence of specific intent, the aiding-and-abetting instruction did not use the term *specific intent*. Defendant reasons that for the jury to have thought that

---

[2](...continued)
degree, or if, after all reasonable efforts, you are unable to agree on a verdict as to that offense, then you must determine whether defendant is guilty or not guilty of the lesser included offense of murder in the second degree.

The difference in these two offenses is that, to convict defendant of murder in the second degree, the government does not have to prove premeditation, as that term is defined in [the instruction for first-degree murder]. Premeditation is an element of the greater offense of murder in the first degree, but not of the lesser included offense of murder in the second degree.

For you to find defendant guilty of the lesser included offense of murder in the second degree, the government must prove each of the following three (3) essential elements beyond a reasonable doubt:

*First*: that defendant caused the death of Clifton Joseph Greany; and
*Second*: that defendant killed Clifton Joseph Greany with malice aforethought; and
*Third*: that the killing took place within the territorial jurisdiction of the United States.

R. Vol. 1, Part 3 at 708.

intoxication could defeat the intent required for aiding and abetting first-degree premeditated murder, it would have had to make "an enormous inferential leap" that the intent described in the aiding-and-abetting instruction was specific intent. Reply Br. at 7.

We disagree. Reading the three instructions together, *see United States v. Serawop*, 410 F.3d 656, 668 (10th Cir. 2005) (appellate court reads instructions as a whole in determining whether jury was misled), we hold that Defendant has failed to establish the second requirement for plain error—that the error be "plain." If the instructions somehow misinformed the jury about the application of the intoxication defense to aiding and abetting first-degree premeditated murder, the error is not obvious to us. We make the following observations:

First, the aiding-and-abetting instruction required the jury to find "that defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means that the government must prove that defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help him or her." R. Vol. 1, Part 3 at 717. We fail to see how one could have "intentionally participated in" the offense of first-degree premeditated murder and could have "consciously shared the [murderer's] knowledge of the underlying criminal act and intended to help him or her" without also acting with premeditation.

-16-

Second, the intoxication instruction states that "premeditation [is] necessary for murder in the first degree as charged in Count One of the Indictment." *Id.* at 718. Yet Count One, as the aiding-and-abetting instruction reminds the jury, incorporates aiding and abetting first-degree murder. *See id.* at 717 ("Each count of the Indictment also charges defendant with a violation of 18 U.S.C. section 2, which provides that: 'Whoever commits an offense against the United States, or aids [or] abets . . . its commission, is punishable as a principal.'"). In other words, Defendant could be guilty of first-degree murder under Count One either as one who committed the offense or as an aider and abettor. Thus, when the intoxication instruction states that Defendant can be guilty of first-degree murder under Count One only if he acted with premeditation, it appears to be saying that premeditation is required whether one is guilty as the principal or as an aider and abettor.

Third, the intoxication instruction states that "the fact that a person may have been intoxicated at the time of the commission of a crime may negate the existence of a specific intent." *Id.* at 718. It then explains that "[t]he element of premeditation necessary for murder in the first degree . . . requires the formation of a specific intent." *Id.* Consequently, the intent required for aiding and abetting first-degree murder, which includes premeditation (and therefore the formation of a specific intent), can be negated by intoxication.

-17-

Fourth, after saying that intoxication can negate the intent required for first-degree murder, the intoxication instruction states that intoxication cannot negate the intent required for second-degree murder or voluntary manslaughter. The instruction says nothing about aiding and abetting. The logical implication is not that the intoxication defense is unavailable to aiders and abettors, but that the application of the defense to an aider and abettor is the same as the application of the defense to a principal. That is, because the instruction refers only to the substantive offenses, it must be treating identically both theories of culpability— as the actual perpetrator and as an aider and abettor.

In sum, it is not apparent that there is any error in what the instructions say or imply regarding the applicability of the intoxication defense to aiding and abetting first-degree premeditated murder. Perhaps it would have been prudent for the instructions to state explicitly that the intoxication defense applies to aiding and abetting first-degree premeditated murder. But there was no plain error in failing to do so.

Finally, we find readily distinguishable the one case relied on by Defendant, *United States v. Sayetsitty*, 107 F.3d 1405 (9th Cir. 1997). There, the district court had properly instructed the jury that voluntary intoxication is not a defense to second-degree murder, but was reversed for failing to instruct the jury that intoxication could be a defense to aiding and abetting second-degree murder. *See id.* at 1412. The Ninth Circuit held that aiding and abetting second-degree

-18-

murder required specific intent, even though second-degree murder itself did not. *See id.* In other words, the district court's error was in failing to distinguish an aider and abettor from a principal with respect to the availability of an intoxication defense. In contrast, Defendant is contending that the instructions needed to specify that aiders and abettors are treated *the same* as principals with respect to the defense.

## IV. CONCLUSION

We AFFIRM Defendant's conviction of first-degree premeditated murder, and REMAND to the district court to vacate either his conviction of felony murder or his conviction of kidnapping.