FILED
United States Court of Appeals
Tenth Circuit

**January 10, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BERNARD MURRAY,

    Defendant - Appellant.

No. 17-1400
(D.C. No. 1:16-CR-00277-RM-1)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ, HOLMES**, and **BACHARACH**, Circuit Judges.

Defendant-appellant Bernard Murray appeals his conviction for violating 18

U.S.C. § 111(a)(1), arguing that the charge against him was constructively

amended by events at trial and the jury instructions. Exercising jurisdiction under

28 U.S.C. § 1291, we reject his challenge and **affirm** his conviction.

**I**

Section 111(a)(1) of Title 18 of the United States Code makes it a crime to

forcibly assault, resist, oppose, impede, intimidate, or interfere with any person

designated in 18 U.S.C. § 1114 while that person is engaged in, or on account of,

---

[*]    This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

the performance of official duties. *See* 18 U.S.C. § 111(a)(1). Persons designated in § 1114 are "any officer or employee of the United States or of any agency in any branch of the United States Government . . . while such officer or employee is engaged in or on account of the performance of official duties, or *any person assisting such an officer or employee* in the performance of such duties or on account of that assistance." 18 U.S.C. § 1114 (emphasis added).

Mr. Murray was charged with one count of violating § 111(a)(1). The indictment charged that M.B.,[1] the victim of the crime, was "an officer and employee of the Federal Bureau of Prisons [('BOP')], an agency of a branch of the United States government, as designated in [§ 1114]." R., Vol. I, at 13 (Indictment, dated Aug. 23, 2016). Significantly, the indictment did not charge that M.B. was *assisting* a federal officer or employee at the time of the offense.

As Mr. Murray acknowledges, the evidence at trial generally showed that he had grabbed M.B. while she was working in the medical area of a federal prison, held an unbent paper clip to her neck, and threatened to kill her. *See* Aplt.'s Opening Br. at 3. Testimony also established, however, that at the time of those events, M.B. was working for the BOP as a "contractor medical assistant" rather than as an officer or employee. R., Vol. III, at 52 (Trial Tr., dated May 30,

---

[1] M.B. has been referred to by other names in proceedings before both the district court and this court. For consistency, we refer to her uniformly as M.B.

2

2017); *see also* Aplt.'s Opening Br. at 3 ("The evidence was uncontroverted that [M.B.] was not an officer or employee of the [BOP] but instead worked in federal prison facilities as a contractor."); Aplee.'s Resp. Br. at 4 ("[T]here was no dispute that M.B. was technically a contractor.").

After the presentation of the evidence, the parties gave closing arguments. The prosecution's closing argument included the following statement:

> The second part, as I said, was [M.B.] a person designated under the statute, that's [§ 1114]. And when you look through that definition, you will see that *part of it includes a person assisting an employee in the performance of that employee's official duties*. Okay. Well, let's break that down. [M.B.] is a contractor with the [BOP]. She is assisting those employees within the medical services. She specifically talked about assisting [a physician assistant]. She is assisting all of the doctors, nurses, PA[s], whoever is in there telling her and directing her what to do. Her official duties include . . . taking vital signs; checking them [i.e., inmates] in; checking them off her call list; getting them to the correct offices that she needs to get them to. So those are her official duties, and she is helping execute those official duties for the other personnel in Health Services.
>
> So we have someone who is that person, [M.B.], assisting other employees in the performance of their duties. Their medical duties, to help these inmates in whatever medical needs they have. Do they need pills? Do they need their blood pressure check? Et cetera. You heard from [the physician assistant], giving you kind of a litany of things that she was looking at in her daily duties, and she had that contract[or], [M.B.] helping her . . . .

R., Vol. III, at 230–31 (emphasis added).

3

Following closing arguments, the district court instructed the jury. Two of the instructions quoted, respectively, the indictment and § 111(a)(1). Another, entitled "Instruction No. 17," set forth the elements of the offense. R., Vol. I, at 164–65 (Jury Instrs., dated June 1, 2017). In relevant part, Instruction No. 17 required the jury to find that M.B. was a "person designated in [§ 1114]" in order to convict Mr. Murray. *Id.* at 164. Instruction No. 17 further stated that:

> Persons designated in [§1114] are any of the following: (i) an officer of the United States or of any agency in any branch of the United States government, (ii) an employee of the United States or of any agency in any branch of the United States government, or (iii) *any person assisting such an officer or employee in the performance of the officer's or employee's official duties.*

*Id.* (emphasis added).

The jury found Mr. Murray guilty. The district court sentenced Mr. Murray and entered judgment, and Mr. Murray timely appealed.

## II

### A

Mr. Murray's sole claim on appeal is that events at trial and the use of Instruction No. 17 constructively amended the charge against him in violation of the Fifth Amendment's Grand Jury Clause. Aplt.'s Opening Br. at 1.

"An indictment is 'constructively amended if the evidence presented at trial, together with the jury instructions, raises the possibility that the defendant was convicted of an offense other than that charged in the indictment.'" *United*

4

*States v. Alexander*, 447 F.3d 1290, 1297–98 (10th Cir. 2006) (quoting *United States v. Brown*, 400 F.3d 1242, 1253 (10th Cir. 2005)). We review de novo whether district court proceedings constructively amended an indictment. *See United States v. Sprenger*, 625 F.3d 1305, 1307 (10th Cir. 2010); *accord United States v. Kalu*, 791 F.3d 1194, 1201 (10th Cir. 2015); *United States v. DeChristopher*, 695 F.3d 1082, 1095 (10th Cir. 2012).

Mr. Murray did not object in district court to the constructive-amendment error that he now alleges. "We review unobjected-to claims of constructive amendment under a plain error standard." *United States v. Gonzalez Edeza*, 359 F.3d 1246, 1250 (10th Cir. 2004). To establish plain error, Mr. Murray must shoulder the burden of demonstrating "(1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights." *United States v. Rosales-Miranda*, 755 F.3d 1253, 1258 (10th Cir. 2014) (quoting *United States v. McGehee*, 672 F.3d 860, 876 (10th Cir. 2012)); *see United States v. Balderama-Iribe*, 490 F.3d 1199, 1204 (10th Cir. 2007) (noting, in effect, that the proponent of the unobjected-to error "bears the burden of establishing that there was plain error warranting relief"). "If he satisfies these criteria, [we] *may* exercise discretion to correct the error if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Rosales-Miranda*, 755 F.3d at 1258 (quoting *McGehee*, 672 F.3d at 876). Though "[t]he plain error standard presents a heavy burden . . . , which is not often satisfied," *United States*

5

*v. Romero*, 491 F.3d 1173, 1178 (10th Cir. 2007), we apply the standard "less rigidly" when reviewing potential constitutional error, *United States v. Miller*, 891 F.3d 1220, 1231 (10th Cir. 2018) (quoting *United States v. James*, 257 F.3d 1173, 1182 (10th Cir. 2001)).[2]

---

[2] The government argues that Mr. Murray's claim is waived under the invited-error doctrine, and thus entirely barred from appellate review, because he requested and approved of the version of Instruction No. 17 used at trial. Aplee.'s Resp. Br. at 7–9; *see United States v. Cornelius*, 696 F.3d 1307, 1319 (10th Cir. 2012) ("[A] defendant . . . waive[s] his right to challenge a jury instruction by affirmatively approving it at trial."). However, as discussed *infra*, Mr. Murray does not meet the plain-error standard. Therefore, we need not address this waiver issue. *See United States v. Headman*, 594 F.3d 1179, 1184 (10th Cir. 2010) ("Defendant acknowledges that he failed to raise the issue at trial and argues that we should therefore review for plain error. The government, however, contends that Defendant waived the issue because the court used the intoxication instruction submitted by Defendant. The dispute is interesting, but we need not resolve it because Defendant has not shown plain error and is therefore not entitled to relief even if he did not waive the issue."); *see also Cornelius*, 696 F.3d at 1321 ("[W]hether we consider Cornelius's jury-instruction objection waived and refuse to consider its merits under the invited error doctrine, or whether we treat the objection as forfeited and review for plain error, Cornelius's argument on appeal fails."). Moreover, because Mr. Murray's claim fails on plain-error review even if, as he argues, this case involves a constructive amendment, we need not consider the government's oblique suggestion that we analyze this case as though it involves a "simple variance." Aplee.'s Resp. Br. at 17; *see United States v. Sells*, 477 F.3d 1226, 1237 (10th Cir. 2007) (observing that a constructive amendment is "reversible per se" but a simple variance "triggers harmless error analysis").

**B**

Mr. Murray argues that the sole basis for the crime charged in the indictment was that M.B. was herself a federal officer or employee, whereas (1) Instruction No. 17, (2) the evidence undergirding the prosecution's closing argument, and (3) the prosecution's closing argument itself improperly permitted the jury to convict him based on M.B.'s role in *assisting* federal officers or employees. Aplt.'s Opening Br. at 10–11. The government argues (1) that there was no constructive amendment to begin with, (2) that any error in this regard did not affect Mr. Murray's substantial rights, and (3) that any error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. Aplee.'s Resp. Br. at 10–24.

We conclude that, even assuming *arguendo* that Mr. Murray could prevail as to the first three prongs of the plain-error standard, his challenge fails as to the fourth. In reaching this conclusion, we are guided by our decision in *Gonzalez Edeza*. In that case, an indictment charged that the defendant had unlawfully traveled in interstate commerce, but the district court instructed the jury that, in order to find the defendant guilty, the government was required to prove that the defendant had traveled "*or used facilities in*" interstate commerce. 359 F.3d at 1250. This court ruled that, although there was "little doubt" that a constructive-amendment claim could satisfy the first three prongs of the plain-error standard, Mr. Gonzalez Edeza did not satisfy the fourth prong. *Id.* at

7

1250–51. That is, the charged "traveling" count and the uncharged "use-of-facilities" crime were "closely linked," as the charging statute criminalized both types of conduct, and there was "overwhelming and essentially uncontroverted evidence" of Mr. Gonzalez Edeza's guilt on the uncharged crime, i.e., that he used telephones to facilitate the operations of a drug conspiracy. *Id.* at 1252. Thus, "allowing [the] conviction to stand would not seriously affect the fairness, integrity, or reputation of judicial proceedings." *Id.* at 1253.

The outcome of Mr. Murray's appeal is dictated by *Gonzalez Edeza.* Here, as there, the statute under which Mr. Murray was indicted criminalized both the charged conduct (involving a federal officer or employee) and the uncharged conduct (involving someone *assisting* such an officer or employee); thus, the charged and uncharged offenses were, within the meaning of *Gonzalez Edeza*, "closely linked." *Id.* at 1252. Furthermore, evidence of Mr. Murray's guilt of the uncharged conduct—more specifically, M.B.'s status as a contractor assisting federal officers or employees—was overwhelming and uncontroverted. R., Vol. III, at 52; *see also* Aplt.'s Opening Br. at 3; Aplee.'s Resp. Br. at 4. Thus, even assuming *arguendo* that Mr. Murray could satisfy the first three prongs of the plain-error standard, allowing his conviction to stand would not "seriously affect the fairness, integrity, or reputation of judicial proceedings," *Gonzalez Edeza*, 359 F.3d at 1253; consequently, as in *Gonzalez Edeza*, Mr. Murray cannot satisfy the fourth prong of the plain-error standard.

8

In analyzing the fourth prong of the plain-error standard, *Gonzalez Edeza* discussed at length the Supreme Court's opinions in *United States v. Cotton*, 535 U.S. 625 (2002), and *Johnson v. United States*, 520 U.S. 461 (1997), and made clear that it was "[f]ollowing [their] teachings." 359 F.3d at 1251. Mr. Murray, however, characterizes *Gonzalez Edeza*'s reading of *Johnson* and *Cotton* as "overbroad," citing our decision in *Brown*. Aplt.'s Opening Br. at 16–17. The cited portion of *Brown* reads:

> In *Johnson* and *Cotton*, the fourth prong of plain error review was interpreted to prohibit recognition of plain error when evidence of a defendant's guilt on the *charged crime* is "overwhelming" and "essentially uncontroverted." *See Johnson*, 520 U.S. at 469–70 (finding that error did not satisfy the fourth prong); *see also Cotton*, 535 U.S. at 633–34 (same). Therefore, if overwhelming and essentially uncontroverted evidence exists in the record to support Mr. Brown's guilt on the *charged crime* . . . , the alleged constructive amendment cannot satisfy the fourth prong of plain error review.

400 F.3d at 1254 (parallel citations and footnote omitted). Contrary to *Johnson* and *Cotton*, says Mr. Murray, the evidence to convict him of the *charged* crime was insufficient as a matter of law, Aplt.'s Opening Br. at 17; therefore, those two cases would not support rejection of his fourth-prong plain-error showing. Mr. Murray thus reasons that, insofar as *Gonzalez Edeza* supports a rejection of his plain-error showing at the fourth prong, the panel there must have used an "overbroad" reading of *Johnson* and *Cotton* that is at odds with those controlling precedents.

9

This argument cannot avail Mr. Murray, however. *Gonzalez Edeza*'s reading of the import of *Johnson* and *Cotton* binds us. Moreover, the *Gonzalez Edeza* panel specifically recognized that the holdings of *Johnson* and *Cotton* were predicated on a different factual scenario, relating to the government's evidence regarding the charged offenses—a scenario that Mr. Murray mistakenly tries to make relevant here—but nevertheless expressly concluded that the legal analysis of the two cases supported its rejection of the defendant's fourth-prong plain-error showing. 359 F.3d at 1251 ("Although [*Johnson* and *Cotton*] addressed instances in which the overwhelming and essentially uncontroverted evidence pertained to the *charged crime*, we do not find their reasoning limited to such cases. Instead, we read this principle to extend to closely linked crimes as well, recognizing that '[r]eversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it.'" (quoting *Johnson*, 520 U.S. at 470)). In sum, we are not free to depart from *Gonzalez Edeza*'s interpretation of *Johnson* and *Cotton*, nor has Mr. Murray offered a persuasive reason why that interpretation should cause us disquiet.

Mr. Murray also relies on *Miller*, which we similarly find inapposite. There, while the indictment charged the defendant with submitting an application containing a specific false statement regarding the suspension of his medical license, witnesses testified at trial about a second false statement in the same application concerning his surrender of a federal controlled-substance

10

registration. 891 F.3d at 1232. The district court's jury instructions did not "narrow the basis for the [charge] back down to the specific false statement charged in the indictment [i.e., related to the suspension of the defendant's medical license]." *Id.* The prosecution's closing argument also suggested that the jury could find the defendant guilty based on the uncharged statement. *Id.* at 1233. This court concluded that the plain-error standard was met, rejecting the government's argument regarding the plain-error standard's fourth prong—specifically, that the defendant's guilt of the charged crime was overwhelming. *Id.* at 1236–37. We noted that, although the district court had ruled that the charged statement was false as a matter of law, it was "hotly disputed at trial" whether the defendant had made that statement with criminal intent, as he testified that he "honest[ly] belie[ved]" that he did not need to report the suspension of his medical license because the suspension had subsequently been "vacated." *Id.* at 1236. This testimony thus belied the government's fourth-prong contention that the evidence of the defendant's guilt of the charged offense was overwhelming, leading the *Miller* panel to conclude that the defendant had carried his plain-error burden. *Id.* at 1238.

At bottom, *Miller* is distinguishable because the panel there was concerned with resolving a different question—one framed by the government's argument. Specifically, in conducting its plain-error analysis, *Miller* was concerned with the strength of the government's evidence regarding the *charged* offense—as the

11

government argued it was "overwhelming," *id.* at 1236 (quoting the government's brief)—*not* with the strength of the government's evidence as to an *uncharged*, but "closely linked," 359 F.3d at 1252, offense, which was the focus of the apposite plain-error analysis in *Gonzalez Edeza*. Consistent with the different concerns of the panels in the two cases, it is noteworthy that *Miller* wholly failed to discuss or even mention *Gonzalez Edeza*.

In any event, insofar as there is conflict between the holdings of *Gonzalez Edeza* and *Miller*, we must treat the earlier decision—*Gonzalez Edeza*—as controlling. *See, e.g.*, *United States v. Reese*, 745 F.3d 1075, 1083 (10th Cir. 2014) ("[W]e have held that where . . . an outlier exists—that is, when two panel decisions conflict—the earlier decision controls.").[3]

Following the controlling guidance of *Gonzalez Edeza*, we conclude that allowing Mr. Murray's conviction to stand will not "seriously affect the fairness, integrity, or reputation of judicial proceedings." 359 F.3d at 1253. Mr. Murray

---

[3]     Relatedly, given the specific earlier holding in *Gonzalez Edeza* that the fourth prong of the plain-error standard is not satisfied on facts very similar to those here, we conclude that Mr. Murray is not benefitted by *Miller*'s general statement that a finding in a defendant's favor on the third prong of the plain-error standard will "ordinarily" make it "natural to conclude" that the fourth prong is also satisfied. *Miller*, 891 F.3d at 1237 (quoting *United States v. Gonzalez-Huerta*, 403 F.3d 727, 745 (10th Cir. 2005)). And because *Gonzales Edeza* is factually on-point and controlling, we see no need to turn to out-of-circuit cases that are purportedly "consistent with" *Miller* in resolving this case. *See* Aplt.'s Reply Br. at 16–18.

has therefore failed to satisfy the plain-error standard, and his conviction must be affirmed.

## III

For the foregoing reasons, we **AFFIRM** Mr. Murray's conviction.

ENTERED FOR THE COURT


Jerome A. Holmes

Circuit Judge