UNITED STATES of America

v.

Andre BLACKMAN, Appellant.

No. 09–4351.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit L.A.R. 34.1(a) Jan. 6, 2011.

Opinion Filed: Jan. 25, 2011.

George S. Leone, Esq., John F. Romano, Esq., Office of United States Attorney, Newark, NJ, for Appellee.

James C. Patton, Esq., Livingston, NJ, for Appellant.

Before: AMBRO and FISHER, Circuit Judges, and SÁNCHEZ, District Judge.*

OPINION OF THE COURT

SÁNCHEZ, District Judge.

Appellant Andre Blackman was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He appeals his conviction, arguing the District Court erred by: (1) denying his motion to vacate the conviction or order a new trial; (2) declining to hold an evidentiary hearing in connection with his suppression motion; (3) ruling in limine that evidence of his prior felony convictions could be used to impeach him if he chose to testify; and (4) ruling that material submitted ex parte for the District Court's in camera review did not constitute proper impeachment material and therefore need not be disclosed to him. For the reasons that follow, we affirm Blackman's conviction.

## I.

Because we write exclusively for the parties, we set forth only the facts and procedural history relevant to our decision.

On June 6, 2007, three members of the Newark Police Department, Officers Jose

---

* Honorable Juan R. Sánchez, District Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

Perez and Leonard Breaux and Sergeant William Connolly, encountered Blackman while they were patrolling Isabella Avenue, a residential area known to the officers as a location of frequent and extensive narcotics sales. As the officers drove down the street, they heard someone alert others the police were coming. Blackman was standing in front of 115 Isabella Avenue, a location frequented by drug dealers because an alley running alongside the house provided a quick escape route through an adjacent backyard. Immediately after hearing the alert, and upon seeing the officers' vehicle, Blackman fled by running down the alley next to the house. Officer Perez left the car and chased Blackman. Approximately two blocks into the chase, Blackman stopped, and Officer Perez saw him remove a black plastic bag from his pants and throw it on the ground. Perez caught up to Blackman and forced him to the ground. Breaux and Connolly arrived shortly thereafter, and, in the process of securing Blackman, Sergeant Connolly saw the rear end of a gun tucked into the waistband of Blackman's pants. Connolly undid Blackman's pants and removed a loaded .40 caliber Smith & Wesson handgun. The officers then recovered the black plastic bag Blackman had discarded and found several small plastic bags within containing marijuana.[1]

Blackman was charged with being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). At trial, the Government presented the testimony of Perez, Breaux, and Connolly, as well as ATF Special Agent John Leonard, who testified that the firearm at issue in this case was manufactured in Massachusetts and was fully operational. The core of Blackman's defense was that Officer Perez was lying, and he presented evidence to challenge the officers' testimony about the events in question. Specifically, he asserted the chase described by Perez did not happen, and presented testimony suggesting the backyard abutting 115 Isabella Avenue was surrounded by a ten-foot fence, which would have prevented Blackman and Perez from running through the yard. First, Sarah Coleman, a resident of 110 Vermont Avenue, the property with a backyard bordering 115 Isabella Avenue, testified that her backyard fence had been over ten feet high since the summer of 2006 when her husband increased the size of their original fence with plywood planks to prevent people from running through the backyard. Second, Private Detective Edward Johnson testified that he was hired by defense counsel to examine the fence in 2009, and, based on his observations, he believed it was highly unlikely or impossible that two adult men could scale Coleman's fence. The jury rejected Blackman's defense and found him guilty.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a district court's denial of a motion for acquittal based on the sufficiency of the evidence. *United States v. Silveus*, 542 F.3d 993, 1002 (3d Cir.2008) (citation omitted). We review the remaining issues raised by Blackman—the District Court's denial of his motion for a new trial, the denial of an evidentiary hearing on his motion to suppress, and evidentiary rulings—for an abuse of discretion. *Id.* at 1005 (motion

---

1. Blackman did not testify at trial or offer evidence of an alternative sequence of events. In his brief, however, he asserts that on the night in question he was walking down the street on Isabella Avenue when he was stopped and arrested by police officers even though he was doing nothing wrong and possessed no contraband. Appellant's Br. 4.

for a new trial); *In re Terrorist Bombings of U.S. Embassies in E. Africa,* 552 F.3d 157, 165 (2d Cir.2008) (denial of a motion hearing); *United States v. Serafini,* 233 F.3d 758, 768 n. 14 (3d Cir.2000) (evidentiary rulings).

### III.

■ Blackman first argues the District Court erred by denying his motion for acquittal or for a new trial. He asserts his conviction is not supported by sufficient evidence because Officer Perez's testimony regarding the events preceding Blackman's arrest contains an inherent factual impossibility—namely a ten-foot barricade prevented either Blackman or Perez from traveling from 115 Isabella Avenue through the yard of 110 Vermont Avenue. "The burden on a defendant who raises a challenge to the sufficiency of the evidence is extremely high." *Serafini,* 233 F.3d at 770. We view the record in the light most favorable to the government to determine whether substantial evidence was introduced to allow a rational trier of fact to convict. *Id.* Because the Government's evidence met this standard, Blackman's factual impossibility argument fails.

First, as the District Court correctly noted, "[d]espite [Blackman's] insistence on the accuracy of Ms. Coleman's testimony, the jury [was] entitled to credit Officer Perez's account of the story." (App.577.) Second, even if believed, Coleman's testimony about the height of her backyard fence is not dispositive of the issue of Blackman's guilt because the route taken by Perez as he chased Blackman has no bearing on whether Blackman illegally possessed a firearm on June 6, 2007. To sustain a conviction under 18 U.S.C. § 922(g)(1), the Government was required to prove: (1) Blackman was a convicted felon who (2) knowingly possessed a firearm (3) in or affecting interstate commerce. *See United States v. Dodd,* 225 F.3d 340, 344 (3d Cir.2000). Blackman stipulated to his prior felony convictions, and the Government presented unchallenged evidence showing the gun Blackman possessed was originally manufactured in Massachusetts and had therefore traveled across state lines, affecting interstate commerce. *See United States v. Gateward,* 84 F.3d 670, 671–72 (3d Cir. 1996) (holding the interstate commerce nexus of § 922(g) is established through proof the subject firearm had previously traveled in interstate commerce). With regard to the second element, when Officer Perez forced Blackman to the ground, his fellow officers immediately saw the firearm tucked into Blackman's waistband. Based on these facts, there was ample evidence for the District Court to conclude that Blackman illegally possessed a firearm and that his conviction should not be vacated or a new trial ordered.

Blackman next argues the District Court erred in declining to grant an evidentiary hearing before ruling on his motion to suppress. An evidentiary hearing for a motion to suppress is not granted as a matter of course. *See* Fed.R.Crim.P. 12(c) ("The court may ... schedule a motion hearing."); *United States v. Sophie,* 900 F.2d 1064, 1071 (7th Cir.1990) ("A district court does not have to hold an evidentiary hearing on a motion just because a party asks for one."). A motion to suppress only entitles a defendant to a pretrial evidentiary hearing when a defendant's moving papers demonstrate a " 'colorable claim' for relief." *United States v. Voigt,* 89 F.3d 1050, 1067 (3d Cir.1996) (citations omitted). "In order to be 'colorable,' a defendant's motion must consist of more than mere bald-faced allegations of misconduct." *Id.* (citation omitted). Instead, a motion to suppress must be detailed enough to present both a colorable constitutional claim

and disputed issues of material fact that will affect a district court's resolution of the motion. *Id.*

■ Here, Blackman submitted a certification in which he denied the police officers' account of his arrest and stated that on June 6, 2007,[2] he was walking down the street when "[t]he police drove up on the sidewalk, blocked my path[,] and took me into custody on Isabella." (App.18.) He denied that police pursued him after he fled, that any search of his person took place, or that he carried a firearm on his person. In opposing Blackman's motion and his request for an evidentiary hearing, the Government argued Blackman had not demonstrated a colorable claim for relief on his motion to suppress because, by denying he was ever searched, he failed to present a Fourth Amendment claim. (App.30.) The District Court agreed with the Government and denied Blackman's request. (App.31.)

"To invoke the Fourth Amendment's exclusionary rule, a defendant must demonstrate that his own Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Stearn*, 597 F.3d 540, 551 (3d Cir.2010). In seeking to suppress the seized firearm, Blackman had the burden of proving not only that an illegal search took place, but that he had a legitimate expectation of privacy in the place searched or item seized. *Id.* (citing *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980)). Review of Blackman's certification reveals he did not meet this burden because he denied a search took place and denied possessing or owning the firearm. Therefore, his moving papers were insufficient to create a colorable claim of relief because they did not

present a disputed issue of fact material to the District Court's determination of whether to apply the exclusionary rule. We find the District Court did not abuse its discretion in ruling an evidentiary hearing on Blackman's motion to suppress was unnecessary.

■ Moreover, in light of the evidence introduced at trial, any error arising from the District Court's failure to hold an evidentiary hearing is harmless. *See Gov't of V.I. v. Williams*, 739 F.2d 936, 939 (3d Cir.1984) (explaining an appellate court reviewing denial of a motion to suppress may examine the entire record). The officers' trial testimony conformed to the police report and revealed the officers possessed reasonable suspicion to stop Blackman and probable cause to remove a handgun from his waistband once the handle of the gun was observed. Based on Blackman's presence in a high crime area, his location in front of a residence known to police to be the site of frequent drug dealing activity, and his flight upon seeing police, the officers had reasonable suspicion to conduct an investigatory stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *See United States v. Brown*, 448 F.3d 239, 251 (3d Cir.2006) (noting the presence of a suspect in a high crime area, behavior by the suspect which conforms to police officers' specialized knowledge of criminal activity, and evasive behavior or flight from police create reasonable suspicion). Blackman did not introduce any evidence at trial which contradicted the officers' testimony regarding their initial observations of Blackman's activity or their observation of a gun handle protruding from his pants. Instead, his major dispute with the officers' testimony was

**2.** In his certification, Blackman states the date was June 7, 2009. We assume this was in

error.

that the chase did not happen, or did not happen in the manner described by Officer Perez. After reviewing the parties' written submissions and the trial transcript, we are satisfied that Blackman's constitutional rights were not violated by the officers' seizure of the firearm protruding from his waistband.

Blackman next argues the District Court erred in permitting the Government to question him about his four prior convictions if he chose to testify; however, Blackman failed to preserve this argument by not testifying. *See Luce v. United States*, 469 U.S. 38, 41, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) (holding that a defendant who does not testify forfeits review of the District Court's decision to admit impeachment evidence). In the absence of a defendant's trial testimony, a reviewing court is unable to weigh the probative value of prior conviction impeachment evidence against the prejudicial effect to the defendant because any harm is "wholly speculative." *Id.; see also United States v. Romano*, 849 F.2d 812, 815–16 (3d Cir. 1988). Accordingly, we will not review the District Court's ruling regarding the admissibility of Blackman's prior convictions as impeachment evidence because he did not raise and preserve this claim.

Finally, Blackman asserts the District Court erred by ruling the Government did not have to disclose evidence submitted ex parte of internal investigations regarding the officers involved in his arrest.[3] He asks this Court to review the submitted documents and determine whether they were appropriately excluded under *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). *Giglio* requires the prosecutor to disclose

to the defense evidence which could be used for impeachment purposes. *See Wilson v. Beard*, 589 F.3d 651, 659 (3d Cir. 2009) (explaining impeachment evidence is favorable to an accused if it could mean the difference between conviction and acquittal). Evidence of specific instances of conduct can be used on cross-examination to impeach a witness if such evidence is probative of the witness's character for truthfulness or untruthfulness. Fed. R.Evid. 608(b).

We review for an abuse of discretion a district court's ex parte decision regarding the admissibility of records reviewed in camera. *United States v. Dent*, 149 F.3d 180, 191 (3d Cir.1998). The Government submitted the internal personnel files of the three Newark police officers involved in this case, asserting it did not believe the files contained impeachment material, but was seeking a ruling from the District Court in an abundance of caution. Following review of the files, the District Court held the files need not be turned over to Blackman pursuant to *Giglio* because "[t]hey are matters that just don't rise to that level." (App.49.) Having reviewed the submitted documents, we find the District Court did not abuse its discretion in ruling the files are not probative of the truthfulness or untruthfulness of the officer witnesses, and therefore did not implicate *Giglio*.

## IV.

For all of the reasons set forth above, we affirm Blackman's conviction.

---

**3.** "The submission of discovery materials to the court for an in camera inspection and decision as to which materials are discoverable is commonly used when the Government's need for preserving confidentiality over the materials must be balanced with the defendant's constitutional right to evidence material to his defense." *United States v. Bocra*, 623 F.2d 281, 285 (3d Cir.1980).