**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 27, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DEJON RAMON WALDRON,

    Defendant - Appellant.

No. 17-4187
(D.C. No. 1:15-CR-00041-DB-1)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **BALDOCK**, and **CARSON**, Circuit Judges.
_____

Law enforcement officers arrested Defendant DeJon Ramon Waldron following a search of his girlfriend's apartment, where Defendant resided. In May 2016, a jury convicted Defendant of possession of methamphetamine with intent to distribute, possession of marijuana with intent to distribute, felon in possession of firearms and ammunition, possession of a firearm in furtherance of a drug trafficking crime, and felon in possession of body armor. During the trial, unknown to both Defendant and counsel for the government, one of the government's witnesses—an Ogden, Utah police officer—was under investigation for lying to his supervisor.

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

After discovering this information, Defendant filed a motion for a new trial, contending the government's failure to disclose that information before trial violated Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972). The district court denied the motion, because the witness was not critical and Defendant failed to show the evidence at issue was material. On appeal, Defendant challenges the district court's conclusion and raises additional arguments regarding due process, ineffective assistance of counsel, the jury instructions, and sufficiency of the evidence. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I.

An anonymous source reported to Utah Adult Probation and Parole that Defendant, a parolee, possessed guns and drugs. Because of that tip, Utah Adult Probation and Parole executed a search of Defendant's residence with the assistance of the Ogden, Utah Police Department ("OPD"). Four OPD officers—Shane Keyes, Lucas Call, Michael Rounkles, and Matthew Ward—searched Defendant's home. Defendant's girlfriend, Kyerinda Moore; Moore's three minor children; and another individual, Chaz Thompson were also present during the search.

In the course of the search, agents discovered a locked closet on a balcony. The closet contained a small Sentry safe and a large red duffel bag. Officers gained entry to the balcony closet and safe with a set of keys they found on Defendant's person. The duffel bag contained a Glock handgun, two magazines, a bullet-proof vest, and a rifle. The safe contained a baggy of methamphetamine, ammunition, multiple empty baggies, and a firearm cleaning kit.

2

Other parts of the apartment contained contraband as well. Officers additionally found heroin and methamphetamine in the chest pocket of a pair of women's overalls in the master bedroom closet, as well as rolled marijuana cigarettes and a scale disguised as a cell phone in the pockets of pink and purple coats in a hall closet. Agents also discovered a large quantity of marijuana in a laundry basket in a child's room.

Following the search, a grand jury returned a superseding indictment charging Defendant with possession of methamphetamine with intent to distribute (Count I); possession of heroin with intent to distribute (Count II); possession of marijuana with intent to distribute (Count III); felon in possession of firearms and ammunition (Count IV); possession of a firearm in furtherance of a drug trafficking crime (Count V); possession of a firearm with an obliterated serial number (Count VI); and felon in possession of body armor (Count VII).[1]

Prior to trial, on April 14, 2016, the United States Attorney's Office contacted an OPD assistant chief seeking any potential impeachment information regarding one of the officers that searched Defendant's apartment—Sergeant Lucas Call—as required by Giglio v. United States, 405 U.S. 150 (1972) (holding that where reliability of a witness may be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within the rule that suppression of material evidence justifies a new trial). The request stated that OPD should make the

_____

[1] A grand jury initially returned an indictment on June 17, 2015. A grand jury returned the operative superseding indictment on April 6, 2016.

3

Government aware of any additional potential impeachment information arising after the request and during the pendency of the criminal action. Young responded on April 19, 2016, that Call's personnel file and his search revealed no investigations or discipline calling into question Call's credibility or honesty.

Less than one week later, on April 24, 2016, Call pursued a stolen vehicle without authorization. On April 26, 2016, OPD Internal Affairs initiated an investigation into whether Call followed proper procedures when he engaged in that pursuit and whether he truthfully informed his supervisor about his involvement and related matters connected with the pursuit.

Call met with Assistant United States Attorney Holly Shick on April 27, 2016, to prepare for trial. Shick asked Call a series of questions to uncover potential impeachment material. Call's answers raised no Giglio concerns. Two days later, on April 29, 2016, OPD Internal Affairs interviewed Call. At that meeting, Call signed an acknowledgement that the inquiry into his conduct involved "lying, incompetence, failure to comply with orders, and pursuit policy violations."

Defendant's trial commenced on May 2, 2016. While the attorneys selected a jury, Call attempted to contact the government's attorneys. Shick telephoned Call during a break. Call explained that he was very sick from food poisoning and asked whether it was necessary for him to testify. During the same conversation, Call told Shick that OPD had placed him on leave because he participated in an unauthorized pursuit. Shick informed Call that he had to testify.

4

The government's attorneys then attended an ex parte conference with the district court. At that conference, they told the district court about the call. The district court inquired whether the incident involved allegations of dishonesty. The prosecutors could not answer the district court's question, but agreed to seek the answer from Call. The district court advised that if no allegations of dishonesty existed, then the government would not need to disclose the incident. Later that day, Call informed Shick that the investigation did not involve allegations of dishonesty. He further stated that he had not been interviewed and that his supervisors were reviewing his dash camera video before interviewing him. Based on his misrepresentations, the government's attorneys did not disclose the investigation to the defense.

During jury selection, the district judge told the potential jurors that they should "be true to the obligation to find a person guilty if the evidence is sufficient to persuade beyond a reasonable doubt that the person did what they are accused of doing." After jury selection, the district court noted "Defendant is not required to put on any evidence. He can call witnesses if he wants to. There has been an indication that none are expected, but if he changes his mind, that is his right." The district court further instructed the jury: "You're finders of the facts and you should keep an open mind. I don't care if you talk to each other about the case along the way, but you should keep an open mind and not form any opinions or little cliques of people who think one way or another about the case as the process moves along."

At trial, Call testified on direct examination solely about his role in searching one part of the master bedroom closet. In an apparent effort to show Defendant's knowledge of the contraband located in the apartment, Call told the jury that the male clothing in the closet was meticulously organized. He testified that he located a male's dark jacket in the closet, and that he located a large amount of well-organized cash and two silver keys in separate pockets in that jacket. He identified those keys and photographs of the cash and other evidence, as well as a photograph of the closet. Cross-examination consisted of three questions, which confirmed that Call found money in the jacket and did not find drugs or identification in the jacket.

Various officers' testimony established that a set of keys possessed by Defendant at the time of the search opened the balcony closet and the safe. Utah Adult Probation and Parole Officer Stuart Carver testified that at the time of the search, Defendant's wallet was attached to his belt by a silver chain and a set of keys was clipped to the silver chain. Detective Keyes testified that Defendant's identification was found in his wallet. Utah Adult Probation and Parole Officer Todd Kirk testified that OPD Detective Matthew Ward brought to the balcony the keys that unlocked the balcony storage closet and the safe. Kirk also testified that the officers located contraband and other items in the storage closet and the safe. Ward testified that he obtained the keys he used to open the balcony storage closet and safe directly from Defendant's person. Ward did not know that Call located a second set of keys in the master bedroom closet. Finally, like Call, OPD Detective Michael Rounkles

6

testified that the men's clothing in the master bedroom closet was meticulously organized.

After the parties rested, the district court instructed the jury regarding the government's burden of proof. The district court's instruction tracked Tenth Circuit Pattern Instruction § 1.05 on the burden of proof. The district court explained to the jury that the Government bore the burden of proving the Defendant guilty beyond a reasonable doubt.

On May 3, 2016, a jury convicted Defendant on Counts I, III, IV, V, and VII of the superseding indictment. On May 6, 2016, OPD emailed the government with a follow up response to the Giglio request. OPD wrote: "We have initiated an internal investigation regarding Sgt. Luke Call. The incident occurred last week and he has been found to have lied to a supervisor and a subordinate." The government requested a copy of the Investigation Report and provided the report to defense counsel on May 12, 2016.

Defendant timely filed a motion for a new trial, claiming the government violated Brady by failing to provide the defense with impeachment material before trial. The district court denied the motion, holding that the evidence allegedly suppressed was not material because Call's testimony was cumulative and not absolutely critical, essential, or of paramount importance to the government's case.

Over eight months later, on July 19, 2017, Defendant, through newly-retained counsel, filed a Motion for Reconsideration of the district court's order denying the motion for a new trial. In that motion, Defendant raised many arguments for the first

7

time, including that the district court violated his Due Process rights by engaging in ex parte communications with the government regarding the Giglio issue and that his trial counsel was ineffective. The district court denied the Motion for Reconsideration, holding that because Defendant did not base his claims on newly discovered evidence, his motion was untimely.

The district court subsequently sentenced Defendant to 144 months in custody on Counts I, III, IV, and VII, and an additional 60 months on Count V, for a total of 204 months imprisonment. Defendant appealed.

## II.

Defendant now raises the following challenges to his convictions: (1) the government suppressed evidence under Brady and Giglio by failing to disclose the investigation into Call's conduct and by failing to discover that investigation; (2) the district court violated Defendant's Due Process rights by holding an ex parte conference with government counsel regarding potential impeachment evidence; (3) the district court erred in several pre-instructions to the jury; (4) defense counsel was ineffective when counsel presented Defendant's case at trial and when counsel presented Defendant's motion for a new trial; and (5) the government introduced insufficient evidence of dominion and control to sustain his conviction. We address each issue in turn.

## A.

"The Brady doctrine protects a defendant's due process right to a fair trial by ensuring that the prosecution does not conceal evidence that could warrant an

8

acquittal." United States v. Headman, 594 F.3d 1179, 1183 (10th Cir. 2010). To establish a Brady violation, a defendant seeking a new trial must show "(1) the prosecution suppressed evidence, (2) the evidence was favorable to the defendant, and (3) the evidence was material." United States v. Mendez, 514 F.3d 1035, 1046 (10th Cir. 2008). "This duty to disclose applies not only to prosecutors, but also to police and other government investigators." United States v. Smith, 534 F.3d 1211, 1221 (10th Cir. 2008). Impeachment evidence falls within the Brady rule. Headman, 594 F.3d at 1183. Evidence "significantly enhancing the quality of the impeachment evidence" usually will be material. Id. "Although Brady claims typically arise from nondisclosure of facts that occurred before trial, they can be based on nondisclosure of favorable evidence (such as impeachment evidence) that is unavailable to the government until the trial is underway." Id. We review de novo a claim of failure to disclose evidence in violation of Brady. United States v. Scarborough, 128 F.3d 1373, 1376 (10th Cir. 1997).

Defendant claims that the government violated his rights under Brady by failing to discover the investigation into Call's conduct and by failing to notify him of the investigation. He contends the evidence is material impeachment evidence. The district court determined that Call's testimony was cumulative, addressed only the search of one-half of a bedroom closet in which Call found no contraband and was, therefore, not material.

Defendant claims the district court erred by concluding that Call's evidence was immaterial. Defendant argues that although Call minimized his role in the

9

search of the apartment, his role in the investigation was significant in other respects. For example, Call participated in the interview of Defendant's girlfriend, who gave conflicting statements as to whom the contraband belonged after the officers accused Defendant of distancing himself from the contraband. Defendant also argues that prosecutors relied upon Call's testimony that he found a second set of keys in a closet to bolster the link between Defendant to the items in the storage closet. Finally, Defendant asserts that the government treated Call as a critical witness by (1) requiring his presence at trial; and (2) by mentioning his participation in the search during its closing argument.

Defendant's Brady claim fails because he has not shown that the undisclosed information is material. "Evidence is only material if it creates a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Smith, 534 F.3d at 1223 (internal quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (internal quotation marks omitted). "To make the materiality determination, we view the suppressed evidence's significance in relation to the record as a whole." United States v. Cooper, 654 F.3d 1104, 1120 (10th Cir. 2011). "What might be considered insignificant evidence in a strong case might suffice to disturb an already questionable verdict." Id.

"In instances where we have concluded that the allegedly suppressed impeachment evidence was material, we have stressed that the witness being impeached was absolutely critical to the government's case." Id. at 1123. The

10

evidence in this case does not support a conclusion that Call was a crucial or critical witness to the government's case. Indeed, several other witnesses that testified at trial provided commensurate testimony—making Call's testimony cumulative. Id. As the district court concluded, Call testified regarding narrow issues relating to the search of one half of the master bedroom closet where he found no contraband. He did find a set of keys that appeared identical to the keys that linked Defendant to the drugs, guns, ammunition, and body armor in the balcony closet and safe. The fact that he located an ostensibly identical set of keys, however, provided little to the prosecution and cannot be described as "crucial" or "critical" to the government's case because the keys used by officers to open the balcony closet and safe were located on Defendant's person. In addition, Detective Rounkles corroborated Call's testimony when he testified that the men's clothing in the master bedroom closet was meticulously organized. The district court correctly determined that, in light of the overwhelming testimony against Defendant from other witnesses, Call's testimony was cumulative and not absolutely critical, essential, or of paramount importance to the government's case.

We also reject Defendant's contention that the government's reference to his testimony in its closing argument made Call a critical witness. A review of the closing argument demonstrates Call played a minor role in the government's closing argument. Although the government mentioned both sets of keys in closing argument, the keys Call found in the master bedroom closet were not the keys that directly linked Defendant to the storage closet and contraband. Both Detective Ward

11

and Officer Kirk testified that the keys Ward removed from Defendant's person opened the closet door and the safe inside of the closet. And, even though the government mentioned Call by name when it referenced the meticulous organization found in Defendant's closet, Detective Rounkles provided similar testimony. For these reasons, Defendant's argument fails. See United States v. Reese, 745 F.3d 1075, 1089 (10th Cir. 2014) (concluding that although the government mentioned a specific officer a handful of times in its closing, that fact did not make the officer a critical witness).

In rejecting Defendant's arguments, we are mindful of the Supreme Court's admonition not to look for "ample, independent evidence of guilt" or "evidence sufficient to support the [jury's] findings." United States v. Ford, 550 F.3d 975, 983 (10th Cir. 2008) (citing Strickler v. Greene, 527 U.S. 263, 290 (1999)). "The critical question is whether the lack of impeachment evidence shakes our confidence in the guilty verdict." Smith, 534 F.3d at 1223. Considering the testimony of the other witnesses at trial—specifically, that other officers found the keys on Defendant's person that opened the balcony closet and safe—we conclude Call's testimony was not a crucial or critical part of the government's case. Id. Because the impeachment evidence does not shake our confidence in the guilty verdict, even assuming that the Government violated the first two prongs of Brady by suppressing evidence favorable

12

to Defendant, the third prong of Brady is not met—*i.e.*, the evidence is not material—and Defendant is not entitled to a new trial.[2]

B.

Defendant next contends the district court violated his right to due process of law when it held an ex parte conference with the government regarding Sergeant Call.[3]  Defendant did not raise this argument in his motion for a new trial.  Rather, he

---

[2] For the first time in his Motion for Reconsideration, Defendant argued the evidence was material in light of alleged discrepancies in the Government's case. Defendant indicates that Call allegedly participated in interviewing Defendant's girlfriend, who allegedly gave conflicting statements as to whom the contraband belonged.  Defendant also posits that law enforcement officers set out to definitively link him to the items in the storage closet and the fact that Sergeant Call reportedly found a second set of keys bolsters that assertion.  This argument, which the district court did not have the opportunity to reach, does not impact our materiality analysis. Multiple officers questioned Defendant's girlfriend, and the testimony at trial clearly established that the keys located on Defendant's person opened the storage closet and safe.  Defendant has failed to argue for plain error on these arguments.  See United States v. De Vaughn, 694 F.3d 1141, 1159 (10th Cir. 2012) (stating the criminal defendant has the burden to satisfy the plain error rule.)  Whether his failure to argue for plain error waives this claim on appeal, under our plain error standard of review for forfeited arguments, see infra Section II.B., Defendant cannot establish plain error because he cannot show prejudice.  United States v. Caraway, 534 F.3d 1290, 1299 (10th Cir. 2008) (noting that under the third prong, a defendant "must demonstrate a reasonable probability that, but for the error claimed, the result of the proceeding would have been different).  Defendant has not shown a reasonable probability exists that had the Government disclosed the evidence, the result of the proceeding would have been different.

[3] Defendant also accuses the district judge of violating Canon 3(A)(4) of the Code of Conduct for United States Judges, which provides that a judge should notify the parties of an unauthorized ex parte communication and allow the parties an opportunity to respond.  Defendant did not raise this issue until filing his Motion for Reconsideration with the district court.  In any event, this appeal is not a judicial disciplinary proceeding.  "It therefore makes no difference on this appeal whether the district court violated the pertinent canon unless that violation somehow could have tainted the judgment from which [Defendant] appeals."  Law Offices of David Efron

13

raised it for the first time in his Motion for Reconsideration. Thus, we must determine whether Defendant waived or forfeited this argument.

"We typically find waiver [as opposed to forfeiture] in cases where a party has invited the error that it now seeks to challenge, or where a party attempts to reassert an argument that it *previously raised and abandoned below*." United States v. McGehee, 672 F.3d 860, 873 (10th Cir. 2012). "Waiver is accomplished by intent, but forfeiture comes about through neglect." Id. (internal brackets omitted). "Waiver, unlike forfeiture, requires a showing that a *known* right has been intentionally relinquished or abandoned." Id. (internal quotation marks and brackets omitted). "A party that has *waived* a right is not entitled to appellate relief." Id. "Unlike waived theories, we will entertain forfeited theories on appeal, but we will reverse a district court's judgment on the basis of a forfeited theory only if failing to do so would entrench a plainly erroneous result." Id.

In this case, although Defendant failed to timely raise this issue, he did not abandon it on the record below. As such, in order to prevail in this appellate challenge, Defendant must make a sufficient showing of plain error. Id. Accordingly, Defendant must show "(1) there was error, (2) that is plain, (3) that

v. Matthews & Fullmer Law Firm, 782 F.3d 46, 55 (1st Cir. 2015). As discussed in more detail in this opinion, no plain error is present. Case law from other circuits supports the Government's position that ex parte communications are a proper method for addressing potential Giglio material. See infra. For this reason, we reject Defendant's argument.

14

affects substantial rights, and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings." Headman, 594 F.3d at 1183.

Even if the district court erred by having an ex parte conference with the government, that error was not plain. To date, this circuit has not spoken on the issue. Case law from other circuits, however, at least implicitly supports the government's position that ex parte communications are a proper method for addressing potential Giglio material. United States v. Ramos-Cruz, 667 F.3d 487, 492 (4th Cir. 2012) (granting the government's ex parte motion to allow law enforcement witnesses to testify using pseudonyms following an ex parte hearing); United States v. Preldakaj, 456 F. App'x 56, 59 (2d Cir. 2012) (rejecting defendant's argument that the court's *in camera* review of potential Giglio evidence violated his due process rights, and holding that the procedure adopted by the district court protected the defendant's interests and maintained the government's legitimate right to protect the confidentiality of its agents' records); United States v. Blackman, 407 F. App'x 591, 592 (3d Cir. 2011) (concluding that material submitted ex parte for the court's *in camera* review did not constitute proper impeachment material and therefore need not be disclosed to the defendant); United States v. Hamaker, 455 F.3d 1316, 1327 (11th Cir. 2006) (concluding that the government did not have to disclose that a witness was a confidential informant based on the government's ex parte motion). Based on these cases allowing ex parte communications in similar situations, any possible error would not have been obvious under the plain error standard. United States v. Munoz, 812 F.3d 809, 816 (10th Cir. 2016); see also

15

United States v. Teague, 443 F.3d 1310, 1319 (10th Cir. 2006) ("If neither the Supreme Court nor the Tenth Circuit has ruled on the subject, we cannot find plain error if the authority in other circuits is split.").

In support of his position, Defendant directs us to United States v. Carroll, 891 F. Supp. 2d 1239 (D.N.M. 2012). That case provides limited support for Defendant's position in that the district judge acknowledged that ex parte communications must be used sparingly because such communications risk compromising a court's impartiality. Its persuasive force, however, ends there. The district court also cited numerous cases that at least implicitly support the government's position that ex parte communications are a proper method for addressing potential Giglio material. And, the court also concluded the defendant suffered no prejudice from the ex parte communication.

Defendant's reliance on United States v. Minsky, 963 F.2d 870 (6th Cir. 1992), is misplaced as well. In Minsky, the Sixth Circuit held the district court erred when it held an ex parte bench conference with the government during a trial. Months prior to trial, the defendant requested information related to conversations and dealings between the government and witnesses. The district court ordered the production of all Brady material in time for effective use at trial. The government failed to disclose Brady material in a timely manner. In reviewing the defendant's claim, the Sixth Circuit acknowledged that an *in camera* review was not only proper, but also probably required to deal with the Giglio issue. The Court concluded that the district court erred, however, not because it held an ex parte conference, but

16

because of the eleventh-hour nature of the conference.  Here, the district court held the ex parte conference in a timely manner.  Accordingly, Minsky does not provide support for Defendant's argument.

As mentioned above, we review this issue for plain error.  Because we have not spoken on the issue, and other circuit's precedent implies that ex parte submissions are a proper method for addressing potential Giglio material, we find no plain error.

C.

Defendant also challenges three jury pre-instructions.  He argues the district court erred (1) in stating the burden of proof; (2) in stating that the defense did not anticipate calling witnesses; and (3) in condoning discussion about the case prior to deliberation.  Where, as here, a party does not object to the inclusion or exclusion of a particular instruction, "we review for plain error."  United States v. Smalls, 752 F.3d 1227, 1245 (10th Cir. 2014).  As stated earlier, to prevail on a claim of plain error, Defendant must establish that "(1) there was error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings."  Headman, 594 F.3d at 1183.

Defendant first challenges the district court's explanation of the burden of proof.  When instructing the jury, the district court provided an appropriate instruction on the burden of proof.  In fact, a large portion of its instruction tracks Instruction 1.05 of the Tenth Circuit Criminal Pattern Jury Instructions.  The district court instructed the jury reciting verbatim Instruction 1.05 as follows:

17

The government has the burden of proving the defendant guilty beyond a reasonable doubt. The law does not require a defendant to prove his innocence or produce any evidence at all. The government has the burden of proving the defendant guilty beyond a reasonable doubt, and if it fails to do so, you must find the defendant not guilty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. It is only required that the government's proof exclude any reasonable doubt concerning the defendant's guilt. A reasonable doubt is a doubt based on reason and common sense after careful and impartial consideration of all of the evidence in the case. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crimes charged, you must find him guilty. If, on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

The district court then further instructed the jury as follows:

You are here to determine whether the government has proven the guilt of the defendant for the charges in the indictment beyond a reasonable doubt. You are not called upon to return a verdict as to the guilt or innocence of any other person or persons. So if the evidence in the case convinces you beyond a reasonable doubt of the guilt of the defendant for the crimes charged in the indictment, you should so find, even though you may believe that one or more other unindicted persons are also guilty. But if any reasonable doubt remains in your mind after impartial consideration of all of the evidence in the case, it is your duty to find the defendant not guilty.

Prior to instructing the jury, however, the district court told the jury that it had to find the evidence "sufficient to persuade beyond a reasonable doubt" and "sufficient to support a verdict of guilty." Defendant argues that the district court's statements regarding "sufficient" evidence confused the jury by allowing them to convict based upon a lesser standard than beyond a reasonable doubt.

The district court's reasonable doubt pre-instruction does not constitute plain error. The pre-instruction did not deny Defendant his right to have the government

18

prove, and a jury find, him guilty beyond a reasonable doubt. "We do not assess the district court's reasonable doubt instruction in 'artificial isolation,' but view it 'in the context of the overall charge.'" United States v. Kieffer, 681 F.3d 1143, 1158 (10th Cir. 2012) (citing Cupp v. Naughten, 414 U.S. 141, 146–47 (1973)). "[T]he proper inquiry is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury *did* so apply it." Victor v. Nebraska, 511 U.S. 1, 6 (1994).

Here, the district court properly relied on the Pattern Jury Instruction. That instruction informed the jury that the government bore the burden of proof and that the government must prove Defendant guilty beyond a reasonable doubt. In addition, the district court's instructions referred to the burden of proof being "beyond a reasonable doubt" in no fewer than fifteen separate instructions. In light of its repeated admonition that guilt must be found "beyond a reasonable doubt," the district court's use of the word "sufficient" on two occasions was not error. Viewing the district court's charge in its entirety, no reasonable likelihood exists that the jury applied the wrong burden of proof.

Defendant also asserts that the district court erred by unnecessarily pointing out twice to the jury that Defendant did not anticipate calling witnesses. Specifically, in its pretrial instructions, the district court said:

> The defendant is not obligated in a criminal case to prove his innocence. It is the government's burden throughout this trial to prove his guilt beyond a reasonable doubt. The burden always rests with the government and never transfers to the defendant. The defendant is not required to put on any

19

evidence. He can call witnesses if he wants to. There has been an indication that none are expected, but if he changes his mind, that is his right . . . .

In response to defense counsel's invocation of the exclusionary rule for witnesses, the court also said that "I will ask each side to monitor your witnesses. Well, only one side has them." Defendant argues (without explanation) that Instruction 1.08 of the Tenth Circuit Criminal Pattern Jury Instructions demonstrate the district court erred when it made these two isolated comments.[4]

Defendant makes a one-sentence argument on this point without any contentions or reasons for them. Because his one sentence argument on this point "is too cursorily briefed to provide a basis for reversing the district court," United States v. Banks, 884 F.3d 998, 1009 (10th Cir. 2018) (citing Fed. R. App. P. 28(a)(8)(A)), we consider it waived. Id.

Finally, Defendant contends the district court erred in condoning discussion about the case prior to deliberation. The district court told the jury: "I don't care if you talk to each other about the case along the way, but you should keep an open mind and not form any opinions or little cliques of people who think one way or another about the case as the process moves along."

No Tenth Circuit or Supreme Court precedent has held that a district court commits error by allowing jurors to discuss a case before deliberations begin. And, the circuits do not appear uniform in their treatment of the issue. The First Circuit

---

[4] Pattern Instruction 1.08 provides that the defendant has the right to remain silent and not testify or call witnesses.

has held that an instruction like the instruction at issue here was error. United States v. Jadlowe, 628 F.3d 1, 18–19 (1st Cir. 2010). The Second Circuit, however, has held that: "Jurors are permitted to have conversations amongst themselves; they must simply steer clear of topics that would prejudice their later deliberations or taint the reasoning of their fellow jurors." United States v. Siegel, 271 F. App'x 115, 116–17 (2d Cir. 2008). And this Circuit has held that a district court did not commit error by failing to admonish the jury not to discuss a pending case during lunch. United States v. Carter, 430 F.2d 1278, 1279-80 (10th Cir. 1970). Under these circumstances, a consensus is not evident among the circuit courts that the Court's instruction—which told the jurors to not form opinions or cliques of people who think one way—was error. As such, the district court did not plainly err. See Teague, 443 F.3d at 1319 ("If neither the Supreme Court nor the Tenth Circuit has ruled on the subject, we cannot find plain error if the authority in other circuits is split.").

## D.

In his opening brief, Defendant simply listed in his summary of the arguments sufficiency of the evidence as to dominion and control of the methamphetamine found in the master bedroom closet. Specifically, Defendant stated his acquittal on the heroin count established that the jury had a reasonable doubt on the elements of dominion and control. In his reply brief, he again provides a conclusory statement with no case law to support his argument. Specifically, he contends: "The government does not address the jury's acquittal on possession for sale of heroin, even though the heroin and the methamphetamine . . . were found in the same item of

21

clothing (women's overalls)." According to Defendant, that acquittal establishes reasonable doubt on the elements of dominion and control.[5]

We will not make arguments for Defendant that he did not make in his briefs. O'Neal v. Ferguson Const. Co., 237 F.3d 1248, 1257 n.1 (10th Cir. 2001). The Federal Rules of Appellate Procedure require that the "appellant's brief must contain . . . appellant's contentions and the reasons for them, with citations to the authorities . . . on which the appellant relies." Fed. R. App. P. 28(a)(8)(A). Simply listing an issue in an appellate brief without argument or citation to authority or raising a similar argument for the first time at oral argument will not suffice to present the issue to the Court. Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d 1025, 1031 (10th Cir. 2007) ("Where an appellant lists an issue, but does not support the issue with argument, the issue is waived on appeal."). Accordingly, we decline to address Defendant's summarily raised sufficiency of the evidence arguments.

E.

In his Motion for Reconsideration on the motion for new trial, Defendant raised ineffective assistance of counsel. We have long held that ineffective assistance of counsel claims "should be brought in collateral proceedings, not on direct appeal." United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc). Indeed, such claims brought on direct appeal "are presumptively dismissible,

_____

[5] At oral argument, for the first time, Defendant challenged the sufficiency of the evidence as to his dominion and control of the closet on the balcony.

22

and virtually all will be dismissed." Id. For effective appellate review, a district court must develop a factual record and address the claim in the first instance. Id. "Even if evidence is not necessary, at the very least counsel accused of deficient performance can explain their reasoning and actions, and the district court can render its opinion on the merits of the claim." Id.

In this case, the district court did not address the argument on the merits, holding that Defendant did not timely file his Motion for Reconsideration. "An opinion by the district court is a valuable aid to appellate review for many reasons, not the least of which is that in most cases the district court is familiar with the proceedings and has observed counsel's performance, in context, firsthand." Id. Defendant's ineffective assistance of counsel claim should be presented to the district court in a collateral proceeding so that the reviewing court can have the benefit of the district court's views. Accordingly, we decline to address the merits of Defendant's ineffective assistance of counsel claim.

## F.

In conclusion, for the reasons set forth above, Defendant's challenges to the district court's decision regarding materiality, as well as his additional arguments regarding due process, ineffective assistance of counsel, the jury instructions, and sufficiency of the evidence, are without merit.[6]

---

[6] Defendant, in a conclusory fashion, urges us to vacate his judgment of conviction and sentence and remand for a new trial under the cumulative error doctrine. Although Defendant mentions in his statement of issues "the cumulative effect of the errors," no heading of his opening brief relates to this topic, and his

AFFIRMED.

                                    Entered for the Court


                                    Joel M. Carson III
                                    Circuit Judge

---

reply brief offers a similar conclusory statement, directed only to the instructional errors.  As mentioned above, listing an issue in an appellate brief without argument or citation to authority does not sufficiently present the issue to the Court.  Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d 1025, 1031 (10th Cir. 2007).  Accordingly, we do not reach Defendant's cumulative error argument.